Filed 9/5/24  P. v. Orlando CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051690 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS170034D) |
| v. | |
| THADIAS KELLY ORLANDO, | |
| Defendant and Appellant. | |

In 2021, Thadias Kelly Orlando entered a plea of no contest to one charge of attempted murder (Pen. Code, §§ 664, 187, subd. (a))[1] pursuant to a plea agreement.  He also admitted to one prior serious felony conviction (§ 1170.12, subd. (c)(2).)  The trial court sentenced Orlando to a total term of 18 years in prison.

In 2023, Orlando filed a petition requesting that his conviction for attempted murder be vacated and he be resentenced pursuant to former section 1170.95. (Stats. 2018, ch. 1015, § 4.)[2]  The trial court denied Orlando's petition, finding that he failed to establish a prima facie case of eligibility for relief.

Orlando now appeals the trial court's order, arguing that the trial court erred in denying his petition at the prima facie stage. For the reasons explained below, we reverse the trial court's order and remand for further proceedings.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Section 1170.95 has been amended and renumbered as section 1172.6.  (Stats. 2022, ch. 58, § 10, eff. June 30, 2022; see also Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.) For ease of reference, we will refer to this statute by its current designation, section 1172.6.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Complaint and Preliminary Hearing

On January 11, 2017, the Monterey County District Attorney's Office filed a complaint charging Orlando, along with three codefendants, with assault by a state prisoner (§ 4501; count 1); attempted willful and premeditated murder (§§ 664, 187, subd. (a); count 2); and custodial possession of a weapon (§ 4502, subd. (a); count 3.) The complaint also alleged that Orlando had personally used a dangerous and deadly weapon (§ 969f, subd. (a)), and had previously been convicted of four prior serious or violent felony offenses, including a prior strike offense (§§ 667.5, subd. (c); 1170.12.)

A preliminary hearing was held on December 8, 2017. At the hearing, the trial court heard testimony from officers Johan Carlo Corona, Jesus Mendoza Jr., and Drew Bittner, who all worked as correctional officers at the Salinas Valley State Prison. Corona and Mendoza Jr. testified that on October 6, 2016, they were monitoring one of the outside yards when they observed a fight occurring between a number of inmates. Corona initially observed three inmates attacking one inmate, and as he and other officers approached, a fourth inmate joined the attackers. He subsequently identified the four attacking inmates, including Orlando, by their state-issued identification cards.

Corona and Mendoza Jr. indicated that the four attacking inmates stood over the fifth inmate, A.D.[3], making upwards and downwards "stabbing-like" motions. A.D. ultimately fell to the ground and began bleeding from multiple areas of his body. After the officers ordered the attacking inmates to get down and "prone out," they did not comply and continued the stabbing motions. The officers then deployed chemical agents, which caused the inmates to temporarily withdraw and start to prone out, but they subsequently stood back up and attempted to "get back" into the fight. Mendoza Jr. then

---

[3] We refer to the victim by his initials only to protect personal privacy interests pursuant to California Rules of Court, rule 8.90(b)(10), (11).

fired at Orlando with a direct-impact sponge round, causing him to prone out for the remainder of the incident.

Bitner testified that A.D. suffered from approximately 20 stab wounds. Bitner also recovered four inmate-manufactured weapons from the scene, including one from the area where Orlando had ultimately assumed his prone position.

Following witness testimony, Orlando's counsel briefly argued that there was insufficient evidence to establish willful, deliberate, and premeditated attempted murder. Orlando's counsel noted that even if Orlando had actually stabbed A.D. in a certain area, which could not be conclusively shown from the testimony, this was not necessarily indicative of his intent to kill A.D.

At the conclusion of the preliminary hearing, the trial court held Orlando and his codefendants to answer on the offenses as charged in the complaint.

### B. Information, Plea, and Sentencing

After the preliminary hearing, on December 12, 2017, the People filed an information charging Orlando and his codefendants with the same offenses alleged in the complaint, namely, assault by a state prisoner (§ 4501; count 1); attempted willful and premeditated murder (§§ 664, 187, subd. (a); count 2); and custodial possession of a weapon (§ 4502, subd. (a); count 3.) As with the complaint, the information also alleged that Orlando had personally used a dangerous and deadly weapon (§ 969f, subd. (a)), and had previously been convicted of four prior serious or violent felony offenses, including a prior strike offense. (§§ 667.5, subd. (c); 1170.12.)

On July 23, 2021, Orlando entered a plea of no contest to attempted murder[4] and admitted his prior strike conviction, in exchange for a total sentence of 18 years. Orlando

---

[4] Prior to Orlando's change of plea in court, the People moved to orally amend the information to add count 4 for attempted second degree murder. While attempted murder is not differentiated by degrees (*People v. Favor* (2012) 54 Cal. 4th 868, 876), it appears from the record that the second degree designation was to remove the premeditation allegation from the original charge in count 2 for attempted premediated murder.

3

stipulated to the preliminary hearing transcript as the requisite factual basis for the offense. The trial court sentenced Orlando to the agreed-upon upper term of nine years in state prison for attempted murder (count 4), doubled to 18 years based on his prior strike conviction, to be served consecutively with his current prison sentence. The trial court dismissed the remaining counts in the interests of justice.

### C. Section 1172.6 Proceedings

#### 1. Petition for Resentencing and Opposition

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019, imposing a number of "statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) Senate Bill 1437 added what is now designated as section 1172.6, which allowed a person convicted in a case involving felony murder or murder under the natural and probable consequences doctrine to file a petition with the sentencing court to vacate the conviction and to be resentenced. Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), which took effect on January 1, 2022, later "[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).)

On March 14, 2023, Orlando filed a petition for resentencing pursuant to section 1172.6. In his petition, Orlando included a verification stating that: (1) the prosecution was allowed to proceed under a theory of attempted murder under the natural and probable consequences doctrine; (2) he had been charged with attempted murder and in lieu of going to trial, he had entered a plea of no contest to the charge; and (3) he "could not presently be convicted of attempted murder" under current California law.

The People opposed Orlando's petition, arguing that Orlando had not made a prima facie case demonstrating he was eligible for relief under section 1172.6. The

4

People argued that at the time Orlando entered his plea, the operative charging document was the information that had been amended orally in court on July 23, 2021. Therefore, because Senate Bill 1437 became effective as of January 1, 2019, the People contended that Orlando could not have been prosecuted under a now-impermissible theory. The People further claimed that the record of conviction, which necessarily included the preliminary hearing transcript (which Orlando had stipulated to as the factual basis for his plea), conclusively demonstrated that Orlando was convicted of attempted murder under a theory that necessarily did not involve imputed malice. While the People acknowledged the split in authority between various courts of appeal regarding reliance on preliminary hearing transcripts, the People argued that the weight of authority demonstrated the transcript could be relied on, provided it was stipulated to a factual basis, when looking for "readily ascertainable facts" within the record of conviction. As the testimony from the transcript demonstrated that Orlando personally stabbed A.D. and was the "most aggressive" of the assailants, the People argued that the evidence only supported a theory of actual malice, not implied malice.

In reply, Orlando argued that he could still have been convicted under the natural and probable consequences doctrine even after the information was amended in 2021 because he was charged with attempted murder, not murder. Accordingly, because Senate Bill 775 had not yet passed, the natural and probable consequences theory still applied to attempted murder charges when Orlando entered his plea. Orlando further claimed that the record of conviction could not establish he was ineligible for relief because: (1) he never stipulated to a theory of liability when entering his plea, and (2) none of the evidence presented at the preliminary hearing conclusively established his intent to kill.

### 2. Trial Court Hearing and Decision

On December 21, 2023, the trial court held a hearing on Orlando's petition to determine if Orlando had made a prima facie case demonstrating his eligibility for relief.

5

At the hearing, the People again argued that Orlando could not have been prosecuted under the natural and probable consequences theory at the time he entered his plea because Senate Bill 1437 was already in effect. The People further claimed that the preliminary hearing transcript clearly showed Orlando was a direct perpetrator, or a direct aider and abettor, of the crime at issue. In response, Orlando's counsel again noted that Senate Bill 775 had not yet passed when Orlando entered his plea. Orlando's counsel also argued that it would be improper for the court to consider the preliminary hearing transcript as this would necessarily require the court to engage in factfinding, which was not allowed at the prima facie stage. At the conclusion of the hearing, the trial court took the matter under submission.

On December 22, 2023, the trial court issued a written order denying Orlando's petition. In its order, the court indicated that it had considered the record of conviction, namely, "the Preliminary Hearing transcript, the Information, the Plea or Waiver of Rights form, the transcript of the plea, and the Abstract of Judgment." The court found that the "sole theory" Orlando was tried under was that he was an actual perpetrator of the attempted murder, and that there was nothing in the record of conviction to support Orlando's position that he was convicted under an impermissible theory of imputed malice. The court therefore concluded that Orlando had failed to make a prima facie case demonstrating his eligibility for relief under section 1172.6.

Orlando timely appealed.

## II.    DISCUSSION

Orlando claims the trial court erred in denying his petition because there was nothing in the information that prohibited the prosecution from proceeding under a theory of imputed malice. Orlando further argues that even if the trial court properly considered the preliminary hearing transcript, this was insufficient to establish that he was ineligible for relief as a matter of law.

6

### A. *Legal Principles and Standard of Review*

As noted above, effective January 1, 2019, Senate Bill 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To that end, the bill amended section 188, subdivision (a)(3), which now requires that all principals must act with express or implied malice to be convicted of the crime of murder, with the exception of felony murder under section 189, subdivision (e). (Stats. 2018, ch. 1015, § 2.) A felony murder conviction under section 189, subdivision (e), as amended by Senate Bill 1437, requires that the defendant be the actual killer, an aider and abettor to the murder who acted with intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3.)

In addition to the amendments to sections 188 and 189 described above, Senate Bill 1437 added what is now section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) As relevant here, section 1172.6 allows a person convicted of murder under prior law to petition the court to vacate their conviction and be resentenced on any remaining counts. (§ 1172.6, subd. (a).) All of the following conditions must apply to warrant section 1172.6 relief: "[¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine[,] or other theory under which malice is imputed to a person based solely on that person's participation in a crime … .[¶] (2) The petitioner was convicted of murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder. [¶] (3) The petitioner could not presently be convicted of murder … because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).) Section 1172.6, subdivision (c), requires the court to appoint counsel for all properly pleaded

7

petitions, and then conduct a prima facie analysis, with briefing by the parties, as to the petitioner's eligibility before determining whether to issue an order to show cause.

Effective January 1, 2022, Senate Bill 775 (2020–2021 Reg. Sess.) amended section 1172.6 to, among other things, "[c]larif[y] that persons who were convicted of attempted murder . . . under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Sen. Bill No. 775, Stats. 2021, ch. 551, § 1(a).) Accordingly, section 1172.6, subdivision (a) provides that "[a] person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court . . . to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of . . . attempted murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of . . . attempted murder. [¶] (3) The petitioner could not presently be convicted of . . . attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

If the petition presents a prima facie showing of entitlement to relief, the court issues an order to show cause. (§ 1172.6, subd. (c).) The court then "hold[s] a hearing to determine whether to vacate the . . . attempted murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1).) The bar for establishing a prima facie claim for relief is very low, and "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*People v. Lewis*

8

(2021) 11 Cal.5th 952, 972 (*Lewis*).)  "We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage.  [Citation.]"  (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.)

### B. Orlando Is Not Ineligible for Relief Because Senate Bill 775 Was Not in Effect When He Entered His Plea

As a preliminary matter, the Attorney General claims that Orlando was not eligible for relief as a matter of law because the law in effect at the time of his plea in 2021 would not allow him to be convicted under the natural and probable consequences doctrine.[5]  In support of this proposition, the Attorney General relies on the holdings in *People v. Reyes* (2023) 97 Cal.App.5th 292 (*Reyes*) and *People v. Lezama* (2024) 101 Cal.App.5th 583 (*Lezama*).  For the reasons explained below, we find both cases to be legally and factually inapposite to the case at bar.

In *Reyes,* the Fifth District Court of Appeal affirmed the trial court's denial of a defendant's section 1172.6 petition, finding that the defendant was ineligible as a matter of law for two reasons.  (*Reyes, supra,* 97 Cal.App.5th at p. 298.)  First, the operative charging document, which charged the defendant with murder, was filed in 2020, after Senate Bill 1437 had passed, thus precluding the prosecution from proving the murder charge under a theory of imputed malice.  (*Reyes, supra,* 97 Cal.App.5th at p. 298.)  Second, when the defendant entered his plea of no contest to second degree murder in 2021, "the now invalid theories of murder liability had already been eliminated.  Consequently, [the defendant] has already received the benefits of Senate Bill No. 1437."  (*Ibid.*)

Similarly, in *Lezama,* the Fourth District Court of Appeal found that the defendant, who had entered a plea for voluntary manslaughter in lieu of a murder charge,

---

[5] We recognize that the trial court did not explicitly indicate in its order that it found Orlando ineligible for relief on this basis; however, because this issue may be dispositive, we shall address it herein.

was ineligible for relief under section 1172.6 as a matter of law. (*Lezama, supra,* 101 Cal.App.5th at p. 590.) In reviewing the legislative history behind Senate Bill 775, which expanded the scope of section 1172.6 to include attempted murder and voluntary manslaughter, the court concluded that the Legislature's intent was "to make relief available to defendants who were convicted by plea or trial at a time when the prosecution could have pursued a murder charge, but the only way of doing so would have been a now invalid theory of imputed malice." (*Lezama, supra,* 101 Cal.App.5th at p. 590.) Accordingly, because the defendant entered his plea to voluntary manslaughter in June 2019 (after the imputed malice theories had been statutory eliminated), he could not have been convicted for murder under an invalid theory. (*Ibid.*)

However, as noted by Orlando in reply, unlike the defendants in *Reyes* and *Lezama,* Orlando was never facing charges of murder, but only of attempted murder, even when the information was amended in 2021. At the time Orlando entered his plea, the law was unsettled as to the impact of Senate Bill 1437 on the offense of attempted murder. For example, the Second District Court of Appeal found that the express language of Senate Bill 1437, which did not refer to attempted murder, reflected the Legislature's clear intent to exclude attempted murder from the scope of relief available under Senate Bill 1437. See *People v. Lopez* (Aug. 21, 2019, B271516) opn. ordered nonpub. Nov. 10, 2021, S258175; see also *People v. Munoz* (September 6, 2019, B283921) opn. ordered nonpub. Jan. 5, 2022, S258234 ["Given that the Legislature was clearly aware of the natural and probable consequences doctrine, included it in the 2017 resolution and the original draft of the bill, and drafted Senate Bill 1437 using clear statutory language, we cannot simply assume the omission of attempted murder was a mistake"].) In contrast, the Fifth District Court of Appeal found that even though Senate Bill 1437 did not refer to attempted murder, the legislative history demonstrated the Legislature's intent for the bill's provisions to apply to any crimes involving express malice, including attempted murder. (See *People v. Medrano* (Dec. 3, 2019, F068714,

F069260) opn. ordered nonpub. Jan. 26, 2022, S259948 ["Because malice cannot be imputed to a defendant who aids and abets a target offense without the intent to kill, the natural and probable consequences doctrine is no longer a viable theory of accomplice liability for attempted murder."]; see also *People v. Larios* (Dec. 3, 2019, F078759) opn. ordered nonpub. Feb. 16, 2022, S259983 ["Because the crime of attempted murder is tethered to the murder statutes, i.e., it does not exist without them, there is no logical basis for applying section 188 to murder and treating the crime of attempted murder as being subject to an impliedly different and unspecified rule of law"].)  This split of authority was not resolved until January 1, 2022, the effective date of Senate Bill 775. (See *People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.)

As our appellate courts were split at the time of the plea as to whether Senate Bill 1437 applied to attempted murder cases, the trial court was not bound to follow only those appellate cases which concluded that Senate Bill 1437 eliminated the natural and probable consequences theory for attempted murder.  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456 [when "appellate decisions are in conflict" a "court exercising inferior jurisdiction can and must make a choice between the conflicting decisions"].)  Indeed, because of this split in authority and based on the record of conviction in this case, it would be mere speculation to conclude the trial court, prosecution, or Orlando had any more clarity on this unresolved question at the time of his change of plea or that the prosecution would have been precluded from proceeding under the natural and probable consequences doctrine.

Accordingly, until Senate Bill 775 was passed, and the above-discussed split was finally resolved, Orlando could have still been convicted under a natural and probable consequences theory of attempted murder.  To explain, when defendants were previously convicted of attempted murder under the natural and probable consequences theory of liability, "the 'intent to kill' was imputed onto [the defendant] from the actual killer or perpetrator.  [Citation.]"  (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1007.)  In other

11

words, the defendant's intent was based on vicarious liability, which is imposed "for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense. [Citation.] Because the nontarget offense is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 852.) In the instant case, because Orlando was one of four participants in the attack on A.D., and the record of conviction does not demonstrate he pled or admitted to a specific theory of liability, it would be speculative to conclude that Orlando's plea necessarily involved an admission to a specific intent to kill based on a theory of express malice, or could not, as a matter of law, have been based on a natural and probable consequences theory of vicarious liability.

In addition, contrary to the Attorney General's assertion, we are not persuaded that the analysis in *Lezama* can be appropriately applied here. The court in *Lezama* based its decision primarily on its finding that the language in section 1172.6, subdivision (a)(3), requiring that a petitioner "could not presently be convicted of murder or attempted murder" was ambiguous. (*Lezama, supra,* 101 Cal.App.5th at p. 588–589.) After reviewing the legislative history behind Senate Bill 775, the *Lezama* court specifically noted that its decision focused on the Legislature's aim in the "manslaughter plea context" and concluded that "the most reasonable reading of the third criterion for establishing resentencing eligibility [section 1172.6, subdivision (a)(3)] is that at the time of conviction—i.e., the time the plea was entered — the only way to a *murder* conviction was through an imputed malice theory." (*Lezama, supra,* 101 Cal.App.5th at p. 590, italics added.) However, the *Lezama* court did not make any findings regarding the legislative intent and aim in the attempted murder context, nor did the court address the split in appellate authority that existed between 2019 and 2022 as it related to Senate Bill 1437 and its application to attempted murder convictions.[6] Moreover, as noted above, the

---

[6] Indeed, such a discussion would have been irrelevant to the issue presented in *Lezama* because no similar split of authority existed as to the application of Senate Bill

12

*Lezama* court's holding was reliant on the fact that the defendant therein was originally charged with murder, not attempted murder (as is the case here). Based on these differences, we cannot conclude that our decision should be guided by the one reached by the *Lezama* court.

Because the record of conviction does not indicate that natural and probable consequences was not an applicable theory, we find that Orlando made a prima facie showing of all three elements required to obtain relief under section 1172.6. First, Orlando was originally charged with attempted murder, even after the information was amended in 2021, and because of the split of authority discussed above, the prosecution would have been allowed "to proceed under a theory of … attempted murder under the natural and probable consequences doctrine" (see § 1172.6, subd. (a)(1)) if the matter had gone to trial. Second, Orlando accepted a plea offer in lieu of a trial at which he could have been convicted of attempted murder, as required under section 1172.76, subdivision (a)(2). Finally, because section 775 confirmed that the natural and probable consequences theory was no longer a valid theory for establishing intent in attempted murder charges, Orlando could not presently be convicted of attempted murder because of changes to section 188 or 189, thus meeting the requirements of section 1172.6, subdivision (a)(3). Accordingly, we conclude the trial court erred in finding Orlando was not eligible for relief as a matter of law.

---

1437 to voluntary manslaughter convictions prior to the passage of Senate Bill 775, as courts uniformly held that the no imputed malice rule did not apply to voluntary manslaughter. (See, e.g., *People v. Turner* (2020) 45 Cal.App.5th 428, 438; *People v. Sanchez* (2020) 48 Cal.App.5th 914, 916; *People v. Paige* (2020) 51 Cal.App.5th 194, 201.)

*C.*     *The Trial Court Erred By Engaging in Factfinding at the Prima Facie*
          *Stage*

Orlando argues that because a simple review of the record of conviction cannot establish his ineligibility of relief under section 1172.6, the trial court engaged in impermissible factfinding in denying his petition. We agree.

As noted above, the trial court indicated that it had reviewed the record of conviction, including the preliminary hearing transcript, and that the "sole theory" Orlando was tried under was as an "actual perpetrator of the attempted murder." However, in reviewing the record of conviction, we find that such a conclusion could only have been made by the court engaging in impermissible factfinding. As discussed above, in entering his plea to attempted murder, Orlando did not stipulate to a particular theory of liability; nor did the People indicate that they were pursuing a specific theory that did not involve imputed malice when they amended the information at the outset of Orlando's change of plea hearing to include an attempted murder charge without the premeditation allegation. The amended information also did not identify any of the four attackers, including Orlando, as the actual perpetrator of the offense. Therefore, for the court to reach the conclusion that Orlando was an "actual perpetrator," it would have had to rely on the preliminary hearing transcript, as no other document in the record of conviction reflects any information regarding the level of Orlando's involvement in the attack on A.D.

Courts of Appeal are divided on the extent to which a trial court may rely on the preliminary hearing transcript to deny a petition at the prima facie showing stage. (Cf. *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166–1168, with *People v. Flores* (2022) 76 Cal.App.5th 974, 988–992 (*Flores*); see also *People v. Davenport* (2021) 71 Cal.App.5th 476, 481–484.) The Supreme Court is currently reviewing whether a court engages in impermissible judicial factfinding by relying on the preliminary hearing

14

transcript to deny a petition under section 1172.6 at the prima facie stage. (*People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670.)

However, without deciding whether the court's review of the preliminary hearing transcript was proper, our review of that transcript shows that it consists entirely of witness testimony and exhibits offered by the prosecution, and the district attorney did not present any argument whatsoever regarding the theory or theories by which Orlando could be found liable for attempted murder. Moreover, the testimony at the preliminary hearing only established that Orlando was one of the men attacking A.D.; it did not establish that he acted with intent to kill or actual malice, and Orlando's counsel specifically argued that there was insufficient evidence to establish willful, deliberate, and premeditated attempted murder. In addition, Orlando did not admit the truth of this testimony, and his stipulation that the transcript provided a factual basis for the plea is not a " 'binding admission for all purposes.' " (*People v. Rivera (*2021) 62 Cal.App.5th 217, 235.) Therefore, even if we were to rely on the preliminary hearing transcript, it does not show that Orlando is ineligible for relief under section 1172.6 as a matter of law. (See *Flores, supra,* 76 Cal.App.5th at pp. 991–992 [finding that even if the preliminary hearing transcript was properly considered, the testimony therein did not preclude the prosecution from proceeding under a now-invalid theory of imputed malice].)

In conclusion, because nothing in the record of conviction conclusively supported the court's determination at the prima facie stage that Orlando was the actual perpetrator, the court's denial impermissibly relied upon " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) As a result, we will reverse the trial court's order and remand the matter with directions to issue an order to show cause and hold further proceedings under section 1172.6. We express no opinion on whether Orlando's section 1172.6 petition should be granted or denied following further proceedings.

### III.    DISPOSITION

The order denying Orlando's Penal Code section 1172.6 petition is reversed.  On remand, the trial court is directed to issue an order to show cause and to conduct further proceedings as required under Penal Code section 1172.6, subdivision (d).

_____
        Wilson, J.

I CONCUR:


_____
Greenwood, P. J.



I CONCUR IN THE JUDGMENT ONLY:



_____
Bamattre-Manoukian, J.



People v. Orlando
H051690